IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LANCE THOMAS RAY SHOCKLEE,                                                      PLAINTIFF

v.                      Civil No. 1:22-CV-01068-SOH-BAB

LEAH ROSE, Assistant Jail Administrator;
DEPUTY HENDERSON;
CORRECTIONAL OFFICER MOSELY;
GEAN SIEGER, Jail Administrator;
DR. ELKINS,
                                                                                DEFENDANTS.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Lance Thomas Ray Shocklee, a pretrial detainee at the Columbia County Detention Center (CCDC), Columbia County, Arkansas, filed the above-captioned civil rights action under 42 U.S.C. § 1983. (ECF No. 1). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purposes of making a Report and Recommendation. This Court previously granted Plaintiff's application to proceed *in forma pauperis* (IFP). (ECF No. 3). This matter is currently before the Court for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon that review and for the reasons outlined below, this Court recommends that the following claims be dismissed: claims alleging a violation of Plaintiff's right to access the courts; Plaintiff's claim alleging a violation of HIPAA; Plaintiff's claim alleging medical indifference; Plaintiff's claims against the defendants in their official capacities; Plaintiff's claims against Dr. Elkins. *See* 28 U.S.C.

1

§ 1915A(b)(1).

## I.   BACKGROUND

Plaintiff's complaint contains three claims.   First, Plaintiff alleges that on or about October 30, 2022, Correctional Officer Leah Rose, Correctional Officer "John Doe" Mosely, and Sheriff's Deputy Henderson fired an unknown quantity of mace pellets into pod-6, his housing unit, through the food port. (ECF No. 1 at p. 6).   Plaintiff contends that he was asleep on his bed rack at the time and woke up when one of the mace balls exploded on his bedding, inches from his face, causing a large amount of liquid concentrate to envelop his face, mouth, nose, and eyes. *Id.* According to Plaintiff, as he was trying to get down from his bed rack, he saw Correctional Officer Leah Rose throw a "canister spewing gas" into the pod through the food port before slamming the food port shut. *Id.*   Plaintiff claims that the three correctional officers then ran towards the control/booking area, leaving everyone in pod-6 to suffocate, himself included. *Id.* at p. 10. Plaintiff claims that he started vomiting before he could get off his bed and all the inmates in pod-6 were gasping for air. *Id.*   According to Plaintiff, he and the other inmates tried calling for the guards through the emergency intercom and yelled for help for a "couple of hours," but they received no response and no medical attention. *Id.*   Plaintiff claims that if one of the inmates had not set off the sprinkler system, they all would have suffocated, but even then, it took Jail Administrator Gean Sieger over 3 hours to shut off the sprinklers. *Id.* at pp. 10-11.   By the time the sprinklers were shut off, Plaintiff contends that the water was freezing cold and more than 12 inches deep.   *Id.* at 11.

Plaintiff contends that all the inmates in pod-6 were then placed on complete restriction for one month in retaliation. *Id.* p. 11.   According to Plaintiff, all the inmates were denied

2

commissary, including stamps, envelopes, phone cards, hygiene products, food and other items that were available to inmates outside of pod 6. *Id.* Plaintiff contends that he was also removed from pod-4 to speak to Gean Sieger and was notified that Gean Sieger was aware that he has (or had) a relationship with Gean Sieger's sister in the "free world." *Id.* Although not entirely clear, Plaintiff appears to claim that Gean Sieger's knowledge of this relationship constitutes a conflict of interest.

Second, Plaintiff claims that from on or about November 17, 2022, to the present, he asked Gean Sieger to provide him with a law book or print out of the first fourteen amendments to the United States Constitution. *Id.* at p. 7. Plaintiff claims that Gean Sieger initially told him that she did not think that the CCDC had any such books or legal resources, but then told him that he would need to request such materials from his lawyer. *Id.* Plaintiff claims that he would request this information from his lawyer, but he cannot do so because he only gets to "speak" to his attorney the day before court. *Id.*

Third, Plaintiff claims that on or about November 16, 2022, he was called to speak with Dr. Elkins right outside the pod. *Id.* at p. 9. Plaintiff claims that the food port door was left open and so the inmates inside the pod as well as the jail administrator could overhear his conversation with Dr. Elkins, in violation of the "HIPPA Act of 1996." *Id.* at pp. 8-9.

Plaintiff names the defendants in their official and individual capacities as to all three claims. *Id.* at pp. 6-8. Plaintiff requests compensatory and punitive damages in excess of $200,000, the demotion of defendants' rank or the termination of their employment, and a mental health evaluation because he continues to suffer "flashbacks" and nightmares. *Id.* at p. 14.

## II. LEGAL STANDARD

Under PLRA, the Court is obligated to review the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pro se complaint, moreover, is to be given liberal construction, meaning "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, "they still must allege sufficient facts to support the claims advanced." *Id.* at 914 (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III. DISCUSSION

### A. First Claim

Recognizing that pro se complaints are to be liberally construed, this Court views Plaintiffs' first claim as alleging four separate causes of action: (1) use of excessive force; (2) unconstitutional conditions of confinement; (3) medical indifference; and (4) procedural due process violations. Each is discussed, in turn, below.

4

1. **Excessive Force**

Plaintiff alleges that Defendants Correctional Officer Leah Rose, Correctional Officer "John Doe" Mosely, and Sheriff's Deputy Henderson used excessive force in discharging mace balls through the food port to pod 6, his housing unit, on or about October 30, 2022, and that Correctional Officer Leah Rose used excessive force in throwing a "canister spewing gas" through the food port during that same incident before slamming the food port shut and leaving the scene. (ECF No. 1 at pp. 5-6).

As a pretrial detainee, this Court analyzes Plaintiff's excessive-force claim under the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To establish such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. Courts, however, cannot apply the "objectively unreasonable" standard mechanically. *Id.* at 397. "Rather, objective reasonableness turns on the facts and circumstances of each particular case." *Id.* (quoting *Graham*, 490 U.S. at 396). A court must adopt "the perspective of a reasonable officer on the scene" and base its analysis on "what the officer knew at the time," without "the 20/20 vision of hindsight." *Id.*

In determining whether a plaintiff has established a plausible claim, moreover, courts "accept[] as true all of the factual allegations contained in the complaint and afford[] the plaintiff all reasonable inferences that can be drawn from those allegations." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). Thus, for the limited purposes of preservice screening under 28 U.S.C. § 1915A(b), the Court does not recommend dismissing Plaintiff's use of excessive force

claim against Defendants Correctional Officer Leah Rose, Correctional Officer "John Doe" Mosely, and Sheriff's Deputy Henderson in their individual capacity. In so finding, the Court takes no position on the merits of the claim, only to say that the facts plead in the complaint are sufficient to pass screening.

### 2. Conditions of Confinement and Medical Indifference

The second half of Plaintiff's first claim concerns the aftermath of the incident involving the alleged use of excessive force. Plaintiff claims that all the mace that had been discharged into pod-6 made it difficult for him to breathe and that there was no air circulating in the housing unit because Defendant Leah Rose had shut the door to the food port. (ECF No. 1 at pp. 10-11). Plaintiff also claim that he and the other pod-6 detainees asked for help and requested medical assistance but received none. (*Id*). Finally, Plaintiff alleges that the sprinkler system dropped approximately twelve inches of cold water into pod-6 before Defendant Gean Sieger turned it off approximately three hours later. (*Id.*). The Court construes these allegations as the factual predicate to claims of unconstitutional conditions of confinement and medical indifference.

### i. *Conditions of Confinement*

Turning first to the conditions of confinement claim, as a pretrial detainee, this Court analyzes such a claim under the Fourteenth Amendment's Due Process Clause. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 525 n.16 (1979)). Under the Fourteenth Amendment, "a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (citing *Bell*, 441 U.S. at 535). There are two ways to determine whether conditions of confinement rise to the level of punishment. First, "a plaintiff could show

that the conditions were intentionally punitive." *Stearns*, 957 F.3d at 907 (quoting *Bell*, 441 U.S. at 538). Alternatively, "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate government purpose or were excessive in relation to that purpose." *Id.* (quoting *Bell*, 441 U.S. at 538-39).

In conducting this analysis, courts consider the totality of the circumstances and "not any particular condition in isolation." *Id.* at 909. Further, "the length of time a prisoner is subjected to harsh conditions is a critical factor in [the court's] analysis." *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (pretrial detainee's claim that he was exposed to raw sewage in his isolation cell for four days did not rise to the level of constitutional significance where detainee failed to establish that he suffered any injury from the exposure, and he declined an opportunity to clean the mess himself).

Here, Plaintiff claims that after mace balls were discharged into his housing unit, Correctional Officer Leah Rose slammed the food port door shut, preventing the housing unit from getting any fresh air and thereby causing him to "gasp[] for air." (ECF No. 1 at p. 10). He further claims that when the detainees requested help and did not receive any "for a couple of hours," one inmate turned on the sprinkler system, which dropped approximately 12 inches of cold water in his housing unit before it was finally turned off hours later. (ECF No. 1 at p. 10). For the purposes of preservice screening, the Court finds that Plaintiff has established a plausible conditions of confinement claim.

### ii. Medical Indifference

Regarding the medical indifference claim, because the Fourteenth Amendment "affords pre-trial detainees at least as much protection as the Eighth Amendment does to convicted

prisoners," *Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006), courts apply the Eighth Amendment's "deliberate indifference" standard in determining whether there has been a constitutional violation in delaying a pretrial detainee's access to medical care. *Id.*

The Eighth Amendment "deliberate-indifference" standard involves objective and subjective components. *See Jolley v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). Specifically, "the plaintiff must demonstrate (1) that he suffered from objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Vaughn v. Greene Cty., Arkansas*, 438 F.3d 845, 851 (8th Cir. 2006). Further, "when the inmate alleges that a delay in medical treatment rises to the level of a [constitutional] violation, the objective seriousness of the deprivation should be measured by reference to the *effect* of the delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005).

In this case, Plaintiff claims that he could not breathe because of the mace that had enveloped his housing unit and that he—and others—requested medical assistance but received none. But Plaintiff does not allege that the effect of the delay in receiving medical treatment resulted in any injury or compounded any existing injury. Accordingly, the Court recommends that this claim be dismissed.

### 3. Procedural Due Process Violations

This brings the Court to Plaintiff's allegation that in the aftermath of the October 30, 2022, incident, everyone in pod-6, himself included, was placed on complete restriction. (ECF No. 1 at 11). Plaintiff describes being placed on restriction as "mass punishment" exacted in

"retaliation." *Id.*

To prevail on a § 1983 retaliation claim, Plaintiff must show: "(1) he engaged in a constitutionally protected activity; (2) a defendant took adverse action that would chill a person of ordinary firmness from continuing in that activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Webb v. Johnson*, 4:21CV3042, 2021 WL 2002712, at * 5 (D. Neb. May 19, 2021) (citing *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Nei v. Dooley*, 372 F.3d 1003, 1007 (8th Cir. 2004).

In this case, Plaintiff's retaliation claim does not pass the first step. Although Plaintiff is not explicit about the activity that purportedly prompted the retaliation, the Court assumes it has something to do with Plaintiff's assertion that an unidentified detainee set off the sprinkler system in pod-6 after mace was discharged into the housing unit. In any event, Plaintiff fails to establish any facts suggesting that *he* set off the sprinkler system or, more to the point, that setting off the sprinkler system itself is an exercise of some constitutionally protected right. Thus, Plaintiff's retaliation claim should fail.

Recognizing that pro se complaints are to be liberally construed, however, this Court views Plaintiff's claim that he was subject to "mass punishment" as a claim that his procedural due process rights were violated when he was placed on "complete restriction" along with every other detainee in pod-6, which prevented him from "receiving any commissary including stamps, envelopes, phone cards, and hygiene products as well as food and other items offered to the rest of the inmates outside of pod-6." (ECF No. 1 at p. 11).

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property; and for those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The purported deprivation here is access to commissary. Plaintiff, however, has no liberty interest in commissary. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) (no constitutional right to access a prison gift or snack shop); *Cato v. Watson*, 212 F. App'x 258, 259-60 (5th Cir. 2006) (loss of commissary privileges does not "implicate any due process concerns"). Further, Plaintiff alleges no facts suggesting that loss of commissary privileges amounts to a deprivation of life or property within the meaning of the due process clause. Accordingly, Plaintiffs' due process claim should fail.

### 4. Official Capacity Claims

As to this claim (and every claim), Plaintiff names the defendants in their personal and official capacities. An official capacity claim is the functional equivalent of a suit against the defendant's employer, or, in this case, Columbia County. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998). To sustain such a claim, a plaintiff must allege the existence of a custom or policy that was the moving force behind the alleged constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff's complaint falls short. There are no allegations that the defendants were acting pursuant to policy or custom in purportedly using excessive force during the October 30, 2022, incident or in its aftermath. Thus, no official capacity claim has been plead in the complaint. Accordingly, it is recommended that any claim against Defendants Correctional Officer Leah Rose, Correctional Officer Mosely, and Sheriff Deputy Henderson in their official capacity be dismissed.

### B. Second Claim

Plaintiff's second claim concerns access to legal resources. (ECF No. 1 at pp. 6-8). The Court views this claim in terms of the constitutional guarantee to access to the courts. *See White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). Meaningful access to the courts "requires prison authorities to assist inmates in the preparation and filling of meaningful legal papers and by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 680 (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343, 354 (1996)). Further, "[m]eaningful access to the courts is the capability to bring actions seeking new trials, release from confinement, or vindication of fundamental rights." *Id.* But the "state has no obligation to enable prisoners to *discover* grievances or to *litigate effectively* once in court." *Id.* (quoting *Casey*, 518 U.S. at 354).

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). "To prove actual injury, moreover, "a prisoner must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

Here, Plaintiff does not claim that he suffered any injury from allegedly being denied access to a specific legal resource, specifically a print-out of or law book concerning "the first fourteen amendments." Indeed, Plaintiff successfully filed the present § 1983 matter. Thus, because Plaintiff does not allege any facts suggesting that he has suffered any actual injury, this

11

Court recommends that Plaintiff's "access-to-the-courts" claim be dismissed without prejudice.[1]

### C. Third Claim

Plaintiff's third claim alleges a violation of the "HIPAA Act of 1996." (ECF No. 1 at p. 8). As this Court understands it, Plaintiff is referring to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). 42 U.S.C. § 1320d-1 *et seq.* HIPAA, however, does not create an express or implied private right of action. *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action"); *Adams v. Eureka Fire Protection Dist.*, 352 F. App'x 137, 138-39 (8th Cir. 2009) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action."). Thus, to the extent Plaintiff is asserting violations of HIPAA as a cause of action, such claims cannot proceed as a matter of law. The undersigned, therefore, recommends that Plaintiff's HIPAA claim against Dr. Elkins be dismissed.

### IV. CONCLUSION

In sum, having reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, this Court recommends that: Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE, EXCEPT –**

1. Plaintiff's excessive-force claims against Correctional Officer Leah Rose, Correctional Officer "John Doe" Mosely and Sherriff's Deputy Henderson in their individual capacities.

---

[1] Plaintiff claims that Jail Administrator Gean Sieger told him that she was aware that he has (or had) a relationship with her sister in the "free world," which constitutes a conflict of interest. (ECF No. 1 at p. 12). To the extent that Plaintiff intends for this claim to establish a separate cause of action under § 1983, such a claim should fail because Plaintiff establishes no facts suggesting that either the conflict of interest itself or any of Sieger's actions that were purportedly motivated by the conflict of interest violated his constitutional rights. *See Doe v. Wright*, 82 F.3d 265, 268 (8th Cir. 1996) ("The first inquiry in a § 1983 claim is to determine '[w]hether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States.'") (internal quotation omitted). Plaintiff, moreover, does not establish any facts suggesting that this purported conflict serves as the factual predicate for any other cause of action.

2. Plaintiff's conditions-of-confinement claim against Correctional Officer Leah Rose, Correctional Officer "John Doe" Mosely, Sheriff's Deputy Henderson, and Jail Administrator Gean Sieger in their individual capacities.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 12th day of January 2023.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE